AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-500
info@cleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

Attorneys for Plaintiff
PEYTON DEWITT, by and through her
Guardian Ad Litem, PAMYLA DEWITT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEYTON DEWITT, by and through her Guardian Ad Litem, PAMYLA DEWITT,<br><br>      Plaintiff,<br><br>v.<br><br><br>TOWN CENTER MALL LLC,<br><br>      Defendant. | CASE NO. 5:25-cv-3190<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff PEYTON DEWITT, by and through her Guardian Ad Litem,

PAMYLA DEWITT complains of Defendant TOWN CENTER MALL LLC, and alleges as follows:

1.      **PREFETORY STATEMENT:** Plaintiff is not a high frequency litigant. This is her first ADA action.  Both law firms representing Plaintiff have represented over 150 unique plaintiffs, the vast majority of whom have filed less than four ADA cases in their lifetimes. Neither of Plaintiff's counsel is a high frequency litigant firm under state law.

2.      **INTRODUCTION:**  Plaintiff Peyton DeWitt is a disabled individual who uses the assistance of a service dog to ameliorate her disability. On April 17, 2025, Plaintiff went to the Town Center Mall located at 57725 29 Palms Highway, Yucca Valley, California (the "Mall") to meet with her service dog trainer and other service dogs. As is her usual practice, Plaintiff was accompanied by her service dog Chance who was wearing a harness that identified him as a service dog. Plaintiff was at the Mall with her mother Pamyla, service dog trainer Brandi, and a few other service dog owners.  Plaintiff was at the Mall to meet with her service dog trainer and Chance because they were adding a few tasks to his repertoire to further assist Plaintiff.

3.      Plaintiff's group chose an area of the Mall that was not busy and had no open stores, only offices, to meet and practice so that they would be out of the way of other Mall patrons. After Plaintiff and her group had been at the Mall for about 30 minutes, a woman who identified herself as the "owner" of the Mall approached them. The woman, Defendant's representative, told Plaintiff and her group that they could not be inside the Mall with their dogs.  Plaintiff's service dog trainer, Brandi, told Defendant's representative that the dogs were service dogs who were working on developing new task skills.  However, Defendant's representative told them that they had to leave despite that the dogs were service dogs and therefore allowed to accompany their handlers inside the Mall. Plaintiff's mother approached Defendant's representative, pointed to Plaintiff who was in her

wheelchair and said "are you telling me that my daughter, her service dog, and I have to leave the Mall?" Defendant's representative reiterated to the group that Plaintiff, her service dog, and her mother had to leave Mall.  Plaintiff's mother was shocked at this demand, and she tried to reason with Defendant's representative by asserting that her daughter is in a wheelchair, it is readily apparent that she is disabled, and her dog is clearly identified as a service dog and is there to assist her. She added "are you telling me that we can't be here?" Defendant's representative told Plaintiff and her mother, "Yes, you have to leave the Mall, and you cannot come back!"

4.     Defendant denied disabled Plaintiff Peyton DeWitt equal access to the Mall because she is a disabled individual who uses a service dog to assist her with tasks related to her disability.  Further, Defendant's employee treated Plaintiff with disrespect, forced her to leave the Mall, and told her never to come back due to the presence of her service dog.

5.     The Defendant's decision to not allow service dogs at the Mall is patently discriminatory and did not afford equal access and enjoyment of its services.  It also contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
…
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

1  DOJ 2010 "Service Animal" guidance available at

2  https://www.ada.gov/resources/service-animals-2010-requirements/.

3          6.      Plaintiff has been to the Mall several times with her service dog before

4  this incident.  In fact, she goes to the LabCorp inside the Mall on a regular basis to

5  get her blood drawn.  Since this incident, Plaintiff and her mother have had to drive

6  to Palm Springs for blood draws.  Plaintiff intends to return to the Mall in the future

7  but cannot do so until the policies of the Mall are made accessible to disabled

8  individuals who use service dogs, including revision of its service dog policies and

9  necessary employee training and/or re-training. She has brought this lawsuit to

10  force Defendant to change its discriminatory and illegal policies and compensate

11  her for refusing her equal access to service at the Mall because she is a disabled

12  person who needs the assistance of her qualified service dog.  Plaintiff seeks an

13  injunction to protect the rights of all disabled persons, including Plaintiff, when

14  accompanied by a qualified service dog at Town Center Mall in Yucca Valley.

15          7.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant

16  to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims

17  brought under California law pursuant to 28 U.S.C. § 1367.

18          8.      **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C.

19  section 1391(b) and is proper because the real property which is the subject of this

20  action is in this district and that Plaintiff's causes of action arose in this district.

21          9.      **PARTIES:**  Plaintiff Peyton DeWitt is a "qualified" disabled person

22  who uses a service dog to assist her with certain tasks related to her disability.  She

23  suffers from mitochondrial neurogastrointestinal encephalopathy (MNGIE) which

24  generally affects her digestive and nervous systems. Plaintiff's muscles and nerves

25  of the digestive system do not move food through the digestive tract efficiently

26  which results digestive problems include feelings of fullness after eating only a

27  small amount, trouble swallowing, nausea and vomiting after eating, episodes of

28  abdominal pain, diarrhea, and intestinal blockage. These gastrointestinal problems

4

lead to weakness, reduced muscle mass, and fluctuations in her glucose levels. MNGIE also affects Plaintiff's ability to regulate her autonomic reflexive systems which manifests as an irregular heart rate that can cause Plaintiff to faint. She also suffers from chronic severe hemiplegic migraines which cause paralysis to the right side of her body.  As a result of her physical conditions, Plaintiff uses a wheelchair about 50% of the time. Plaintiff has also been diagnosed with anxiety which causes her to have anxiety attacks.  Plaintiff's disabilities substantially limit many of her major life activities including walking, standing, regulating her body's systems, maintaining relationships, going out in public, and thinking clearly during anxiety attacks.

10.    Plaintiff relies upon her service dog, a professionally trained bobtail-Bernard (St. Bernard and old English sheep dog hybrid) named "Chance," to assist her with a variety of essential tasks to support her health and safety. Chance has been trained to smell changes in the scent of Plaintiff's sweat during changes in glucose levels, heart rate fluctuations, and anxiety attacks, and Chance is also trained on a variety of verbal commands. Chance is trained to bring her medicine and water when given the commands, "bring medicine" or "bring water." In addition, without command, he retrieves her blood sugar monitor when he senses her blood sugar is low. When Plaintiff's heart rate fluctuates such that she is about to faint, Chance alerts her by placing his paw on her leg, signaling Plaintiff to get to the ground. If Plaintiff begins to lose consciousness, Chance helps her get safely to the ground and then lies on her lap to protect and ground her until she regains clarity. Chance also provides deep pressure therapy to help manage anxiety by laying across her lap, both when commanded with cues such as "hug" or "across" and when he senses she needs support.  Plaintiff is also training Chance to pull her wheelchair.

11.    Chance was and continues to be professionally trained to be a service dog by a professional trainer, Brandi Schlater.  Plaintiff and Chance have been

1   working together since Chance was a puppy.  Plaintiff and Chance reinforce their

2   training together daily.  Plaintiff is a qualified person with a disability as defined

3   under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and

4   California Government Code § 12926(1).

5       12.    Defendant TOWN CENTER MALL LLC is and was at all times

6   relevant to this Complaint the owner, operator, lessor and/or lessee of the subject

7   business located at 57725 29 Palms Highway, Yucca Valley, California, known as

8   the Town Center Mall Yucca Valley.

9       13.    Town Center Mall Yucca Valley is a place of "public

10  accommodation" and a "business establishment" subject to the requirements *among*

11  *other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans

12  with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of

13  California Civil Code sections 54 *et seq.*

14      14.    **FACTUAL STATEMENT:**  Plaintiff Peyton DeWitt has been

15  working with her service dog Chance for about a year.  Chance is a two-year-old

16  bobtail-Bernard who was trained to be a service dog. Chance was both

17  professionally trained and individually trained by Plaintiff to be a service dog.

18  Plaintiff has also continued to train Chance to serve her specific needs throughout

19  their relationship. Chance and Plaintiff also continue to work with a professional

20  trainer, especially when Chance is learning new tasks, such as pulling Plaintiff's

21  wheelchair which they were practicing during the incident at the Mall.  Chance is

22  specifically trained to assist Plaintiff with certain tasks including retrieving

23  medicine, water, and Plaintiff's blood glucose monitor.  Chance alerts Plaintiff to

24  get to the ground if she is in danger of losing consciousness and can assist Plaintiff

25  in getting safely to the ground. Chance also provides deep pressure therapy to help

26  Plaintiff manage her anxiety.

27      15.    Chance is a working service dog; he is not a pet.  Plaintiff and Chance

28  have trained extensively together, and they supplement that training daily.  Plaintiff

6

takes Chance everywhere with her in public.  It is important they stay together as much as possible because (a) Chance provides important services for Plaintiff; (b) Chance is a medical alert dog who is able to alert Plaintiff of potentially life-threatening medical conditions so that she can find a safe place and seek immediate medical treatment; and (c) it is part of the training and bonding requirement that they be together constantly to maintain their bond. Where Plaintiff goes, Chance goes.  Below are photos of Chance as he looked on the day of the incident:



COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES



16.    Plaintiff has been working on adding tasks to Chance's repertoire, including the task of having Chance pull her wheelchair. In order to train Chance to do this task properly and safely, Plaintiff has been meeting regularly with her trainer. On April 17, 2025, Plaintiff, her mother met with her trainer (Brandi), and several other service dog users who were also working on further training of their service dogs at Town Center Mall Yucca Valley.

17.    When the group arrived at the Mall, they chose to meet in an area on the right side of the Mall entrance which was fairly empty. There were no open businesses in the area, only offices and vacant store fronts were around. The group encountered a few Mall patrons, but no one seemed bothered by them or about the work they were doing. One patron asked if they could pet Chance, but Plaintiff responded "no" because he is working right now.

18.    After Plaintiff and Chance had been at the Mall for about 30 minutes, one of the members of Plaintiff's group, Manny, was approached by a woman who identified herself as the "owner of the Mall." The woman (Defendant's

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

representative) told Manny that dogs were not allowed in the Mall. Pamyla and Brandi walked over to Defendant's representative, and Brandi told her that the dogs were all service dogs and therefore allowed to be anywhere the public is allowed inside the Mall. Then, Brandi asked Defendant's representative, "are you telling us we have to leave because of the service dogs?"

19.    Defendant's representative responded, "yes, you need to leave." She also added that customers were complaining about them. Pamyla then interjected to ask what customers had complained. She added, "Everyone we have encountered has been great and engaging with us." Defendant's representative then said that Five Star Gym & Fitness, which is located inside the Mall, had complained.[1]

20.    Brandi asked Defendant's representative for her name, but she refused to provide any identifying information. Brandi then asked Defendant's representative show they could contact to discuss this issue further, and she responded that they could contact the manager of the Mall.  But she refused to elaborate on how the manager could be contacted.

21.    Plaintiff and her mother were shocked at being forced to leave the Mall due to the presence of Plaintiff's service dog. Plaintiff's mother tried to reason with Defendant's representative by asserting that her daughter is in a wheelchair, it is readily apparent that she is disabled, and her dog is clearly identified as a service dog and is there to assist her. She added "are you telling me that we can't be here?" Defendant's representative told Plaintiff and her mother, "Yes, you have to leave the Mall, and you cannot come back!"

22.    Plaintiff and the rest of her group left, and Plaintiff has not returned to

---

[1] Although neither Plaintiff nor her mother said anything, they both found this response hard to believe. In March 2025, Plaintiff, Pamyla, and Brandi had visited Five Star Gym & Fitness with Chance to inquire about a membership and to see how he would act with all the distractions inside the gym. Chance had no issues inside the gym, and the management of Five Star Gym & Fitness was very accommodating to Plaintiff and Chance and told them to come back anytime.

the Mall since the incident despite her need and desire to do so.  Plaintiff and her mother have used the LabCorp in the Mall for blood draws in the past, but they must now go to LabCorp locations that are farther from their home due to Defendant's non-compliance service dog policy.

23.    Plaintiff has a desire to return to Town Center Mall Yucca Valley, in particular she would like to continue to patronize the businesses there, especially the LabCorp.  However, Plaintiff does not want to go back to the Mall because her previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws.  It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

24.    Plaintiff wishes to return to Town Center Mall Yucca Valley, but only *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to Town Center Mall Yucca Valley until these policies and training are in place.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 U.S.C. §§ 12101 *et seq.*)

25.    Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 24, above, and incorporates them here by reference as if separately repled hereafter.

26.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing

existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

27.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

28.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

29.     Town Center Mall Yucca Valley is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(E).

30.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

31.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

11

32.     Defendant has a policy and practice of denying access to patrons of Town Center Mall Yucca Valley with service animals. Defendant's decision to eject Plaintiff from the premises and forbid her form returning contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

    ....

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.

33.     On information and belief, as of the date of Plaintiff's most recent visit to Town Center Mall Yucca Valley on or about April 17, 2025, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

34.     In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

35.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "shopping center." 42 U.S.C. § 12181(7)(E).

36.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

1    with disabilities...;"

2    § 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure

3    that no individual with a disability is excluded, denied service, segregated, or

4    otherwise treated differently than other individuals because of the absence of

5    auxiliary aids and services...;"

6          The acts and omissions of Defendant set forth here were in violation of

7    Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28

8    C.F.R. Part 36 *et seq.*

9          37.    On information and belief, as of the dates of Plaintiff's encounters at

10    the premises and as of the filing of this Complaint, Defendant's actions, policies,

11    and physical premises have denied and continue to deny full and equal access to

12    Plaintiff and to other disabled persons who work with service dogs, which violates

13    Plaintiff's right to full and equal access and which discriminates against Plaintiff on

14    the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal

15    enjoyment of the goods, services, facilities, privileges, advantages and

16    accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

17          38.    Defendant's actions continue to deny Plaintiff's right to full and equal

18    access by deterring Plaintiff from patronizing Town Center Mall Yucca Valley and

19    discriminated and continue to discriminate against her on the basis of her

20    disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of

21    Defendant's goods, services, facilities, privileges, advantages and accommodations,

22    in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

23          39.    Under the Americans with Disabilities Act, 42 U.S.C. sections 12188

24    *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in

25    section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff

26    is being subjected to discrimination on the basis of her disabilities in violation of

27    sections 12182 and 12183 of this title.  On information and belief, Defendant has

28    continued to violate the law and deny the rights of Plaintiff and other disabled

persons to "full and equal" access to this public accommodation since on or before

Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

40.    Plaintiff seeks relief under remedies set forth in section 204(a) of the

Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal

Regulations adopted to implement the Americans with Disabilities Act of 1990.

Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA

who is being subjected to discrimination on the basis of disability in violation of

Title III and who has reasonable grounds for believing she will be subjected to such

discrimination each time that she may use the property and premises, or attempt to

Town Center Mall Yucca Valley, because of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
**FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

41.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

hereafter, the factual allegations contained in Paragraphs 1 through 40 of this

Complaint and all paragraphs of the third cause of action, as plead infra,

incorporates them herein as if separately re-pleaded.

42.    Under the California Disabled Persons Act (CDPA), people with

disabilities are entitled to the "full and free use of . . . public buildings, . . . public

facilities, and other public places."  Civil Code § 54(a).

43.    Civil Code section 54.1(a)(1) further guarantees the right of "full and

equal access" by persons with disabilities to "accommodations, advantages,

facilities . . . hotels, lodging places of accommodation, amusement or resort, or

15

other places to which the general public is invited." Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

44. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

45. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

46. Town Center Mall Yucca Valley is a public place/facility within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

47. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should she seek to return to these facilities. Plaintiff cannot return to Town Center Mall Yucca Valley until she

receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination daily since April 17, 2025, all to her statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

48. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

49. Plaintiff wishes to return to patronize Town Center Mall Yucca Valley but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Town Center Mall Yucca Valley and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

50. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

51.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

52.     **DAMAGES:**  Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because she was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Town Center Mall Yucca Valley and will continue to cause her damages each day these barriers to access and policy barriers are still present.

53.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this

18

complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

54.   **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

55.   Plaintiff suffered damages as above described as a result of Defendant's violations.  Damages are ongoing based on her deterrence from returning to Town Center Mall Yucca Valley.

WHEREFORE, Plaintiff prays for relief as stated below.

## THIRD CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

56.   Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 55 of this Complaint and incorporates them herein as if separately re-pleaded.

57.   At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal

19

accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

58.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

59.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

60.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

61.    The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

62.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against

20

disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

63.    Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief she requests. Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Peyton DeWitt prays for judgment and the following specific relief against Defendant:

1.    An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of Town Center Mall Yucca Valley;

c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest under Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant any other relief that this Court may deem just and proper.

Date: November 26, 2025                          CLEFTON DISABILITY LAW
                                                 ALLACCESS LAW GROUP


                                                 ____ */s/ Aaron M. Clefton*
                                                 By AARON M. CLEFTON, Esq.
                                                 Attorneys for Plaintiff
                                                 PEYTON DEWITT, by and through
                                                 her Guardian Ad Litem, PAMYLA
                                                 DEWITT

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: November 26, 2025                          CLEFTON DISABILITY LAW
                                                 ALLACCESS LAW GROUP


                                                 ____ */s/ Aaron M. Clefton*
                                                 By AARON M. CLEFTON, Esq.
                                                 Attorneys for Plaintiff
                                                 PEYTON DEWITT, by and through
                                                 her Guardian Ad Litem, PAMYLA
                                                 DEWITT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES